Good morning, Your Honors. Deanna Dotson on behalf of Appellant Mr. Miles. Speak right up. Okay. I'd like to address two main arguments today on insufficient evidence and misconduct. Mr. Miles contends that the government failed to show that there was specific intent for him to steal funds. There was no evidence to show that actually he did receive any money. The government relied on mainly bank statements showing the deposits of the funds from the military job that Mr. Reyes had, and they were showing various withdrawals. However, there was only one withdrawal that even came close to half of the amount, which was the alleged agreement that Mr. Reyes would work at this job, actually not work, and then he would pay half of his pay to Mr. Miles. And didn't Reyes testify to that effect? Yes, he did. However, Mr. Reyes also testified that he lied numerous times. His first interview during the investigation, he said one thing. The next time, he said another thing. And he continually admitted to lies even during the examination. He would say one thing. But, counsel, with respect, this is a jury trial, and the jury heard all of this. Your side, whether it was you personally, did your very best to cast doubt on the testimony of Mr. Reyes and the numerous other witnesses and what the government put on, and apparently were unsuccessful. And we have to review a jury verdict in a light most favorable to the government? I don't see how you went on this, on this particular argument. Do you have a better argument than this one? No. I would like, Your Honor, if you look at Addendum 1 on the opening brief, because there are all the bank statements. And this was not pointed out, unfortunately. With respect, counsel, this is an appellate court, not a trial court. And we have to look at the record and we look at the – everything in the light most favorable to the government. The government put on its case. You put on your case. The jury didn't believe your case. There is nothing in your brief, at least that this judge found, that suggests in the slightest that applying that standard of looking in the light most favorable to the government, that you can overturn this jury verdict. Where is the evidence to show that Mr. Miles had the specific intent to steal? Well, I mean, I don't have to prove this. All I have to do is look at the issue. No, but it's not there. You have the bank statement. You have Mr. Reyes's testimony. There were several other people that testified to what happened there. Mr. Reyes was, in fact, a co-conspirator. He knew better than anybody else, and he got part of the money. He got it from your client, I gather. No, no. If he was paid directly, then he had to take the money out of his account and pay. And that's where there is no evidence to show that he actually took that amount that he was supposed to take out and actually gave it to Mr. Miles. That's where the evidence is lacking. Didn't he say that? He said that, but there's no proof to show that that actually happened. Because if you look at the bank records, the withdrawals aren't there to justify where he did take out half of the money that he received and even took out half of the money. There isn't any evidence in there to show he took out half, let alone any evidence to show that he did give it other than he said, well, I did. But he said a lot of things that were contradictory in the evidence. So there's no proof. And then another thing that I think you need to look at is that, okay, the amount of money that he earned, $24,000 approximately, which would mean $12,000 to my client, Mr. Miles, that was a period of over five years. What benefit would Mr. Miles have to enter into this conspiracy, alleged conspiracy to earn such little amount of money and risk losing his job, his retirement benefits, his reputation in the community? I mean, he'd lose it all, and he did lose it all based on the testimony of the so-called co-conspirator. It was more reasonable that Mr. Reyes did need a part-time job, and if you look at the bank statements, it shows he didn't earn that much money. He was only he was worked for the bus company. However, he didn't have a regular schedule. He'd have to call in each day. He always had Saturdays and Sundays off because that's what he wanted, and that's the way they worked his schedule. So it was reasonable that he could have worked and possibly did work at some of this, of the hours scheduled. But if you look at the days, even in 2004 where he only earned $322 for the entire year. Didn't you make this argument to the jury? Your Honor, I wasn't. I'm only. Do you know who the trial counsel was who made this argument to the jury? Unfortunately not. They didn't make the argument to the jury? No, Your Honor. Did they have an opportunity to make the argument to the jury? I'm assuming they had the opportunity to make these arguments. How are we supposed to consider an argument that was never made? Well, I think you can look at the evidence, Your Honor, and look to see. But that's not our role.  We're not a trial court. We are a court of appeal. We look at the record. We find out what was provided to the jury. And like I said, the presumption is strongly in favor of the government here. You're making an argument that should have been made to the trial court, not to us. I know. But I'm arguing that the evidence that was submitted to the jury was insufficient to prove that either one of these counts. The evidence that did go to the jury was insufficient. And that is something I believe that Your Honors can look at, because it is a de novo review, to look at and see was this evidence sufficient to prove that he had the specific intent to steal the first element of the first charge. You don't think that they could infer that from Reyes's testimony? No, I don't, because I think because they submitted all the bank statements and numerous other documents to show various aspects of whether he worked or not or signing time cards. But they didn't show any time cards from any other employees to show that Reyes was the only employee that Mr. Malish signed time cards, that he was the only one with the kind of work history that was alleged. But what you forget is the testimony is that there were time cards for Reyes, but he never worked. Well, that's what he says. So he was collecting money that he was not entitled to. Well, that's what he says. But the time cards show that he did work some of the time. But he didn't work that many hours, really. If you add up the total five years, he worked a little more than one year's worth of work in five years. That's not very much time that was notated and that he was paid for. So I think it's really important to look at what are the details of this work and what evidence was shown that substantiates that he was the only one whose time cards were signed. He's the only one whose schedules were changed. And that's just not the case. Did you want to talk about the other issue? Yes, I did, Your Honor. I'd like to talk about misconduct. And on the misconduct, first of all, the court, when it was brought to the attention of the court that a script was found that from the previous witness that had just and called it Jenks material. And that was error, Your Honor, because it definitely was not Jenks. It was not signed and it was not adopted by this witness. Even the government argued that it wasn't Jenks material. And a mistrial should have been granted and it wasn't. But, Counsel, in this particular case, with the acquiescence of your, I don't know who the trial counsel was, the judge allowed the defense counsel to abandon her motion for a mistrial and conduct a cross-examination of Bergman as a remedy for the misconduct. Isn't that correct? That's correct. But what else was the counsel supposed to do when a judge has made the ruling? You've already made the ruling. You've already made the request. Once the judge makes the ruling, are you supposed to keep objecting? Well, the reality is, from our perspective, we are, in fact, a human enterprise. There is no perfection in a human enterprise. Correct. What you've got is a trial situation where the trial judge concluded that there was error here. We see lots of errors that don't result in trials being overturned. With the acquiescence of defense counsel, the trial judge allowed cross-examination, went through the whole thing. There was no further objection. How do you get past that? I mean, it was an acquiescence. The jury heard the information. Where do you go from there? Well, I argue prosecutorial misconduct over and above just asking for the mistrial because the script was. And if you look at the script, it wasn't the script wasn't merely an outline of, as the U.S. attorney alleged, well, it's just an outline of the questions I'm going to ask. Because whatever it was, the defense counsel had it and cross-examined Mr. Bergman concerning it, did he not or she not? I don't know what the gender of the trial counsel was. It was a she, Your Honor. Okay. Then so she asked questions of Mr. Bergman about that, did she not? She asked limited questions. It was only a cross-examination, re-cross-examination of and asked limited questions as far as. And she withdrew her motion for a mistrial as a result. I don't think she actually withdrew it. She just accepted the judge's order that this was the remedy because she declared the judge declared it was jank security. But she got the remedy. She agreed to the remedy. So wherein lies the problem? I'm still arguing, Your Honor, on plenary review. I hear that. But I'm just saying legally, where's the problem? Okay. The problem is that when you hand a witness not only questions but answers, to me, that is gross misconduct. And the answers were in the script. It wasn't merely just the questions but the answers. And if you compare actually what Mr. Bergman, the witness, testified, the questions and the answers pretty much follow, even to the fact unusual, and the answer is yes, the way the question was asked, he still got that. And then in the script it says in cap letters, he was a ghost employee. Did Judge Gilmour, once the, this item, script, whatever, was found, and Judge Gilmour offered trial defense counsel the opportunity to cross-examine, is it Bergman, the witness? Bergman, correct, Your Honor. Was there any restriction on the amount of time devoted to cross-examination after discovery? I don't believe there was a real restriction on time. The Court did admonish that not to go over specific details. But it was recrossed. In other words, she could only ask, she was limited in the questions that she could  It wasn't bringing back the witness for direct. When she finished the recross, that is the cross-examination of witness Bergman after the script was disclosed, when she came to the end, did trial defense counsel suggest she had more questions to answer, or the limitations of recross prevented her from asking the questions that she wanted to ask? I don't believe so, Your Honor, no. Is there any claim in this appeal of ineffective assistance of counsel? I did not claim that because All you have to do is say yes or no. No, I did not claim that. Okay. Did you want to save any time for rebuttal? Yes, I do, Your Honor. Okay. You have about two minutes. I just have one question. Judge Breyer has a question. I just wanted to make sure. Didn't Bergman say he hadn't seen the transcript? No, he did admit that he did see it and that he did, but he said he really didn't look over it at one point on direct, but then on recross he did say, well, he did look at it. But it's obvious if you do compare Okay. That's what I want. You've answered your question. Thank you. Okay. Thank you. We'll give you two minutes on rebuttal. Thank you. We'll hear from the government at this time. Good morning. May it please the Court. Tom Miller for the United States. Your Honor, our position on these issues are that when viewed in the light most favorable to the government, there was sufficient evidence for a reasonable jury to find Mr. Miller's guilty of both charged offenses. Did you try this case? No, Your Honor. Who tried it? It was tried by two special assistants, Your Honor, in the office. Special assistants? Yes, Your Honor. That means they had another job. Yes, Your Honor. What was that job? To go outside the record, their job was they were Navy lawyers, Judge. Navy JAG lawyers? Yes, Your Honor. What in the world were they doing prosecuting a case in federal court? I'm sure the Court's been to Hawaii. I'm sure you have, Your Honor. And we have many large military bases on the island. We have what we call traffic court, where they handle many of the before the United States magistrate, Judge, those offenses. This is a felony trial. Yes, Your Honor. And we have military lawyers, special assistants, not only in the military, but in other agencies that regularly come to court. These two did try this case, Your Honor. I can't imagine a line assistant U.S. attorney doing what happened here, giving a witness a list of questions and, in some cases, suggested answers. Can you? We agree the practice is improper. What happened was certainly an error. We admit that in our brief. We do submit, though, that the way it was resolved takes it into only a plain error review, Your Honor. We admit that this was a young assistant, inexperienced. He admits that on the record. He admits his inexperience in handling trials in federal court. And I can only go outside the record and assure the Court that remedial action, substantial remedial action has been taken since that to avoid this sort of incident from reoccurring. As a former U.S. attorney, I can tell you it is a dumb idea to let a special assistant try a case unsupervised. Dumb. I don't challenge that, Your Honor. We understand your argument on that point. Anything else? Please don't shoot the messenger, Your Honor. I understand. Actually, the message is for your boss. That message has been received, Your Honor, in a previous decision of this Court. And this occurred, this trial was prior to that decision in the Harrison matter. And that message has been very well received and actions, substantial actions have been taken. There's nothing wrong with JAG lawyers. I was one myself. But I can't imagine allowing someone to try a case unsupervised. Okay. Yes, sir. Anything else you want to talk to us about? Your Honor, I'm going to submit it on the brief. This is a mistake. The point is there's sufficient evidence. There is sufficient evidence. And whatever error occurred with regard to the script was cured by the district judge. Yes. It was cured by the district judge and agreed to acquiesce then by the defender, Federal public defender, who agreed that was the procedure. As the Court said, if you agree, there are several steps that can be taken, Judge Gilmour said. If you agree this is nothing more than pure ignorance, I'll let you, if you want, bring this gentleman back, Mr. Bergman, back for a recross. And she said yes. Ms. Burns said yes. Brought him back in, asked recross, and did not raise the issue as to a script as to the four other or five other witnesses that followed Mr. Bergman. This was simply an issue that was clear, was the ignorance of the trial counsel, and was the procedure suggested by the Court, was accepted by the defense attorney, the trial counsel. Well, this defense attorney was, you mentioned public defender. Was this a public defender or a military person? A Federal public defender was the defense attorney, Your Honor. Okay. So the military wasn't involved in the defense. No. This was an experienced Federal public, assistant Federal public defender. Okay. Now, I understand now. But the prosecutor was a JAG person. Yes, Your Honor. Okay. Okay. I think we understand your argument. Thanks for coming over today. Thank you, Your Honor. Rebuttal. We'll give you two minutes. You have a nice trip. Thank you, sir. Please come and see us. You should have come to North Dakota. The weather was a little worse than in Hawaii, where I've been many times. I spent 30 years in upstate New York, Your Honor. Okay. That's why I'm in Hawaii now. Okay. Counsel, you have two minutes for rebuttal. Okay, Your Honor. Thank you, Your Honor. Questions weren't asked about whether any other witness received a script, because the witnesses that followed that particular cross-examination, they weren't involved in any kind of information that would have required a script. However, as alleged in the opening brief, there were some witnesses that it appeared a script may have been given to them just based on answers and leading questions that were asked. Wasn't the prosecutor asked by the district judge whether any other witness had been shown a script? Yes, Your Honor. And wasn't the answer no? Correct, Your Honor. Do you have any proof to the contrary? I don't have any actual script like was found in this script. However, if you read the transcripts, Your Honor, you'll see where questions were asked. Even Mr. Reyes was asked the age of his daughter, and he couldn't even remember that. That probably wasn't on his script, because he should have remembered it. However, in the script that was found, there were errors. For instance, there was an error that said that Bergman worked at Liberty from 2000 to 2002, and part of his duties were to take care of the time cards. Well, that was in cross, clarified that he worked from January 2002 to November 2002, gathering the cards. So even in the script, there was an error that was brought out. So the information, Your Honor, was if the transcripts are read, the excerpts of records that are read and compared, it's definitely visible that error was made, that it was plain and it did jeopardize the substantial rights of Mr. Miles to a fair trial, and it jeopardized the proceedings itself. To be able to just to brush it aside, which I believe the judge did just brush it aside and call it jinx material and get rid of it, that it was plain error, and his conviction should be reversed, because what happened at this trial, the evidence just does not prove that he was guilty of the crime charge. Thank you. Roberts. Thank you for your argument. The case just argued will be submitted for decision.
judges: Bright, Hawkins, Smith M.